UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CLIFFORD BAILEY and
JAMES SPENCER, for themselves and
others similarly-situated, and UNITED STEEL,
PAPER AND FORESTRY, RUBBER,                        Case No. 3:17-cv-332
MANUFACTURING, ENERGY,                             Class Action
ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION,
AFL-CIO-CLC,                                       U.S. District Judge_____

      Plaintiffs,

v.

VERSO CORPORATION,

      Defendant.
_____/

**COMPLAINT AND JURY DEMAND**

1.      Plaintiffs Clifford Bailey, James Spencer, and United Steel, Paper and

Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

International Union, AFL-CIO-CLC sue defendant Verso Corporation to enforce

collectively-bargained promises of life insurance coverage and death benefits for

retirees from Verso's now-closed Wickliffe, Kentucky paper mill (the "Wickliffe

mill").

1

**Jurisdiction and Venue**

2.     This Court has jurisdiction to enforce collectively-bargained retiree life insurance coverage and death benefits promises, and over this action, under **(1)** Labor-Management Relations Act ("LMRA") Section 301, 29 U.S.C §185; **(2)** Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1132(a)(1)(B), (a)(3), (e) and (f); and **(3)** 28 U.S.C. §§1331 and 1337.

3.     Venue is proper in this district, under 29 U.S.C. §185(a) and 29 U.S.C. §§1132(e)(2) and (f), where **(1)** Verso is headquartered and does business, **(2)** USW represents employees, **(3)** life insurance coverage and death benefits addressed in this lawsuit were administered and provided by Verso, and **(4)** the breaches and ERISA violations that are the subject of this complaint occurred.

**The Parties**

4.     Plaintiff and class representative Clifford Bailey started working at the Wickliffe mill in 1972.  Bailey was in the USW-represented collective bargaining unit.  Bailey retired after 35 years of service in 2007 and received life insurance coverage from Verso until January 2017.  He is, or was, a participant in the welfare benefit plan created, sponsored, and operated by Verso to provide life insurance coverage and death benefits for Wickliffe mill retirees. Bailey resides in Arlington, Kentucky.

5.      Plaintiff and class representative James Spencer started working at the Wickliffe mill in 1971.  Spencer was in the USW-represented collective bargaining unit. Spencer retired after 41 years of service in June 2012 and received life insurance coverage from Verso until January 2017.  He is, or was, a participant in the welfare benefit plan created, sponsored, and operated by Verso to provide life insurance coverage and death benefits for Wickliffe mill retirees.  Spencer resides in Clinton, Kentucky.

6.      Plaintiff United Steelworkers is a labor union representing workers in industries affecting commerce within the meaning of 29 U.S.C. §§142, 152, and 185.  United Steelworkers is headquartered in Pittsburgh, Pennsylvania, has offices throughout the United States and Canada, and represents employees in this district.

7.      United Steelworkers is the successor of labor unions that were parties to collective bargaining agreements ("CBAs") governing the Wickliffe mill bargaining unit, including  **(1)** United Paperworkers International Union (UPIU); **(2)** Paper, Allied-Industrial, Chemical and Energy Workers International Union (PACE); and **(3)** Local 680, affiliated with the predecessor international unions (and later affiliated with United Steelworkers). This complaint refers to United Steelworkers, its predecessor unions at the Wickliffe mill, and Local 680 collectively as "USW."

8.      Defendant Verso Corporation is a producer of printing papers, specialty papers, and pulp.  Verso's principal place of business and headquarters are at 8540 Gander Creek Drive, Miamisburg, Ohio 45342.

9.      Verso is an employer engaged in interstate commerce within the meaning of 29 U.S.C. §§142, 152, and 185.

10.     Verso acquired NewPage Corporation (including Wickliffe Paper Company LLC) and the Wickliffe mill in 2015.  NewPage is a wholly-owned subsidiary of Verso.  NewPage acquired the Wickliffe mill from MeadWestvaco Corporation in 2005.  Prior to 2002, the Wickliffe mill was owned and operated by Westvaco Corporation.  Westvaco merged with the Mead Corporation in 2002 and became MeadWestvaco Corporation.  This complaint refers to Verso and its predecessors collectively as "Verso."

## Summary of Facts

11.     For a period of years, through 2016, USW represented the unit of production and maintenance employees at the Wickliffe mill and was party to the series of CBAs with Verso and its predecessors that governed the Wickliffe mill. These CBAs include the 2010, 2002, 1996, 1992, and earlier CBAs.  Excerpts from some of these CBAs are attached as Ex. A-E.

**Retiree life insurance and death benefits**

12.    The CBAs promise USW-represented Wickliffe mill employees who retire under the collectively-bargained pension plan that, beginning at retirement, they will receive company-paid life insurance coverage for "their lifetime."  See Ex. A-D, Art. 27.

13.    The CBAs promise a $4,000 death benefit payable to each retiree's beneficiary or beneficiaries upon the retiree's death.  See Ex. A-D, Art. 27.

14.    Company-paid life insurance coverage is a valuable retirement benefit that gives, and was intended by Verso and USW to give, retirees dignity and the peace of mind that funeral and other end-of-life expenses will be offset by death benefits which will reduce the financial burden on retirees' families.

15.    The 2010 CBA—the last CBA governing the Wickliffe mill before Verso closed the mill in June 2016—addresses "Retiree Life Insurance."  That CBA, Ex. A, Art. 27, Sec. II(4) at 30, provides in pertinent part:

(a)    …At actual retirement…coverage will be reduced to the $4,000 Life Insurance/Medical Insurance coverage presently provided for retired employees.

(b)    Employees hired after March 31, 1993 who retire between ages 55 and 65 with at least 5 years of service will have $4,000 Group Life coverage for the remainder of their lifetime.  If they have less than 5 years of service, they will lose coverage.

(c)    Per the Master Agreement retiree life insurance death benefits will be terminated for active employees at the expiration of this agreement.

16.     The 2002 CBA promises life insurance coverage for the "remainder" of each retiree's "lifetime." See Ex. B, Art. 27 at 32.

17.     The 1996 CBA promises life insurance coverage for the "remainder" of each retiree's "lifetime." See Ex. C, Art. 27 at 45.

18.     The 1992 CBA promises life insurance coverage for the "remainder" of each retiree's "lifetime." See Ex. D, Art. 27 at 43-44.

**Last chance to retire with life insurance**

19.     Verso and USW agreed at 2010 bargaining and in the 2010 CBA that Verso would provide each retirement-eligible employee the opportunity to retire with life insurance that would begin at retirement and remain in effect for the retiree's life, until the retiree's death, so long as that employee retired before the June 30, 2017 expiration of the 2010 CBA. See Ex. A, Art. 27, Sec. II(4)(c) at 30.

20.     The 2010 CBA limits the "retiree life insurance death benefits" to employees who retire on or before June 30, 2017 and states that the promise of Verso-sponsored life insurance coverage is "terminated" for employees who retire after "expiration of this agreement." See Ex. A, Art. 27, Sec. II(4)(c) at 30.

**Bargaining history**

21.     USW and Verso's predecessor agreed in 1992 bargaining and in the 1992 CBA that lifetime company-paid life insurance coverage would not be provided to those employees hired after March 1993 who take early retirement—

*i.e.*, who retire between the ages of 55 and 65 with "less than five (5) years of service." See Ex. E, Sec. A.5(b) at 2.

22.    USW and Verso's predecessor agreed in 1992 bargaining and in the 1992 CBA that those employees hired after March 1993 who take early retirement—*i.e.*, who retire between the ages of 55 and 65 with "at least five (5) years of service"—would be provided lifetime company-paid life insurance coverage which paid $4,000 to the retirees' beneficiary or beneficiaries at the time of the retiree's death. See Ex. E, Sec. A.5(b) at 2.

23.    During 1992 and later bargaining, USW and Verso and its predecessors reaffirmed that unit employees hired before April 1993 who retired under the pension plan became entitled to life insurance coverage at the time of their individual retirements, to continue for "their lifetime."

24.    As Bailey and Spencer were preparing to retire, each was told by a Wickliffe mill human resource official that he was entitled to pension and retiree life insurance coverage for life.

25.    Verso and its predecessors periodically sent written "confirmation" to retirees—before and after expiration of the CBA that the individual retiree retired under—that the retiree had retiree life insurance coverage.

**Verso bankruptcy**

26.     In January 2016, Verso filed Chapter 11 reorganization bankruptcy under 11 U.S.C. §1101 *et seq*.  The Chapter 11 proceedings took place in the U.S. Bankruptcy Court for the District of Delaware.

27.     Verso filed a motion asking the bankruptcy court to allow Verso to continue providing "retired Union Employees"—including Wickliffe mill retirees—"life insurance" and "death benefits."  See Ex. F at ¶¶11, 78, 80, 91-93, and 100.  The bankruptcy court granted Verso's motion on February 24, 2016.  See Ex. G at ¶1.

**Verso assures retirees of a "lifetime" $4,000 "death benefit"**

28.     Verso wrote to Bailey and Spencer in April 2016 about the "RETIREE $4,000 DEATH BENEFIT" for "Former MeadWestvaco, NewPage, and Verso USW Employees."  Verso wrote that Wickliffe mill retirees have life insurance coverage for the "*remainder of their lifetime.*"  Verso called this "lifetime" coverage the "$4,000 union member's death benefit." See Ex. H (emphasis in original).

29.     While Verso was preparing to close the Wickliffe mill in 2016, Bailey asked the mill human resource department to assure all Wickliffe mill retirees that their collectively-bargained death benefits were lifetime and not affected by the mill closing or by the end of the USW-Verso collective bargaining relationship at

the mill. Bailey asked, too, that Wickliffe mill retirees be provided phone numbers for retirees' beneficiaries to call after the retirees' deaths for information about company-promised death benefits.

30. Verso provided April 2016 "lifetime" notices to USW and to Wickliffe mill retirees. See Ex. H.

**Verso closes the Wickliffe mill and continues retiree life insurance**

31. Verso closed the Wickliffe mill in June 2016.

32. Before closing the Wickliffe mill, Verso President and CEO David J. Paterson made a public statement on April 5, 2016 (see Ex. I): "We know that the closure of the Wickliffe Mill will be a challenging and emotional experience for our employees and their families." Paterson continued:

> Verso is committed to treating them with fairness, dignity and respect during this difficult time. The closure of the mill is in no way a reflection on our Wickliffe team members, and I want to thank each and every one of them for their hard work and dedicated service to Verso and our customers.

33. Verso emerged from bankruptcy on July 15, 2016. Verso's reorganization plan and the bankruptcy court's confirmation order provided for continued life insurance for retired employees.

34. Verso continued retiree life insurance coverage for Wickliffe mill retirees after Verso closed the mill and after Verso emerged from bankruptcy.

**Verso practices and performance**

35.     Until January 1, 2017, Verso provided company-paid life insurance coverage to each eligible Wickliffe mill retiree, whether the retiree retired under the 2010 CBA or under an earlier CBA.

36.     Until January 1, 2017, Verso provided company-paid life insurance coverage to each eligible Wickliffe mill retiree and did so after each and all of the CBAs expired.

37.     Verso informed Wickliffe mill employees after the 2010 CBA was negotiated that they were entitled to retiree life insurance as long as they retired under the collectively-bargained pension plan no later than June 30, 2017.

**Verso terminates "retiree death benefit"**

38.     Verso sent Bailey and Spencer and other Wickliffe mill retirees an "important announcement about the retiree death benefit and/or life insurance benefits for former Verso/NewPage retirees." See Ex. J.   Verso sent this announcement around November 2016.

39.     Verso wrote to Bailey and Spencer and other Wickliffe mill retirees that as of January 1, 2017, it "will no longer offer" company-paid retiree "death benefits or life insurance benefits" to employees who retired before December 21, 2012.  Verso wrote that it would end the "Retiree Death Benefit, as well as the Retiree Life Insurance" coverage on December 31, 2016. See Ex. J.

10

40. Verso ended life insurance coverage for Bailey, Spencer, and other Wickliffe mill retirees on December 31, 2016.

## Class Action

41. Bailey and Spencer bring this ERISA/LMRA action for themselves, and on behalf of similarly-situated Wickliffe mill retirees under Fed. R. Civ. P. 23(a) and (b)(1) and (b)(2).

42. The class consists of about 70 former USW-represented employees who **(1)** retired from the Wickliffe mill; **(2)** were promised by Verso and are entitled to company-paid life insurance coverage; **(3)** were provided Verso-paid life insurance coverage; and **(4)** had their life insurance coverage ended by Verso.

43. All class members were, and continue to be, entitled to Verso-paid life insurance coverage.

44. The class is so numerous that joinder of all class members is impracticable.

45. There are questions of law and fact common to the class, including questions about the lawfulness under ERISA and LMRA of Verso's unilateral termination of collectively-bargained retiree life insurance coverage and death benefits.

46.     Bailey's and Spencer's claims are typical of those of the class, as all the claims arise under CBAs and an ERISA-regulated welfare benefit plan covering Wickliffe mill retirees.

47.     Bailey's and Spencer's claims address CBA breaches and ERISA and LMRA violations which affect and harm all class members.

48.     Bailey and Spencer will fairly and adequately protect the interests of the class because they have **(1)** the same claims and interests arising out of the same facts and law and the same CBA promises and welfare benefit plan; **(2)** retained attorneys knowledgeable and experienced in ERISA and LMRA retiree benefit class action litigation; and **(3)** joined with and secured the support of USW in their efforts to enforce collectively-bargained promises of lifetime retiree life insurance coverage and death benefits.

49.     Verso's termination of life insurance coverage adversely affects all class members so that injunctive and other class-wide relief is appropriate.

50.     A class action will avoid the burden, expense, and risk of inconsistent adjudications of individual claims.

## COUNT I – CBA BREACH

51.     Paragraphs 1-50 are incorporated in this count.

52.     The CBAs create vested rights to lifetime life insurance coverage for Bailey, Spencer, and other class members.

53. Verso is obligated by the CBAs to provide life insurance coverage to Bailey, Spencer, and other class members, beginning at retirement and continuing for their lifetimes, with a death benefit payable to a retiree's beneficiary or beneficiaries at the time of the retiree's death.

54. Verso terminated life insurance coverage without the retirees' consent.

55. Verso terminated life insurance coverage without USW's consent.

56. Verso wrongfully terminated life insurance coverage and stopped paying death benefits without the retirees' consent.

57. Verso wrongfully terminated life insurance coverage and stopped paying death benefits without USW's consent.

58. Verso's termination of retiree life insurance coverage and cessation of death benefits payments breached the CBAs.

59. Verso's termination of retiree life insurance coverage and cessation of death benefits payments caused, and continues to cause, damage and harm to Bailey, Spencer, other class members, and USW.

60. Verso is liable to Bailey, Spencer, other class members, and beneficiaries of class members who died since December 31, 2016, and to USW, for wrongfully terminating retiree life insurance coverage, for stopping payment of

death benefits, for breaching the CBAs, and for the consequences of terminating the coverage and cessation of death benefits payments.

## COUNT II – BREACH OF PLAN AND ERISA

61.    Paragraphs 1-60 are incorporated in this count.

62.    The collectively-bargained promises of retiree life insurance coverage made to Wickliffe mill retirees, with death benefits payable to the retiree's beneficiary or beneficiaries upon the retiree's death, constitute a welfare benefit plan within the meaning of ERISA, 29 U.S.C. §1002(1).

63.    The plan promises company-paid life insurance coverage to Bailey, Spencer, and other class members for each retiree's lifetime.

64.    Bailey, Spencer, and other class members are, or were, participants in the plan within the meaning of ERISA, 29 U.S.C. §1002(7).

65.    Under the plan, each retiree's right to company-paid life insurance coverage vested at the time of retirement.

66.    Verso was the sponsor and administrator of the plan that provided  life insurance coverage and death benefits for Wickliffe mill retirees, within the meaning of 29 U.S.C. §§1002(16)(A) and (B).

67.    Verso's termination of retiree life insurance coverage, and cessation of payment of death benefits, provided under the plan violated and violates Verso's obligations under ERISA, 29 U.S.C. §§1132(a)(1)(B) and (a)(3).

68.     Verso's conduct caused, and continues to cause, damage and harm to Bailey, Spencer, and other class members.

69.     Verso is liable to Bailey, Spencer, other class members, and beneficiaries of retirees who died since December 31, 2016, for wrongfully terminating retiree life insurance coverage, for stopping payment of death benefits under the plan, for breaching the plan, and for the consequences of terminating the coverage and benefits provided by the plan.

## RELIEF

Plaintiffs ask the Court to:

A.     Certify the class, appoint Bailey and Spencer as class representatives, and appoint their counsel as class counsel;

B.     Declare that Verso's termination of retiree life insurance coverage and failure to pay death benefits breached the CBAs;

C.     Declare that Verso's termination of retiree life insurance coverage and failure to pay death benefits breached the collectively-bargained welfare benefit plan and violated ERISA;

D.     Issue its injunction directing Verso to satisfy its contractual and statutory duties to provide lifetime retiree life insurance coverage and death benefits and to restore and maintain and comply with the welfare benefit plan in effect before 2017;

E.     Direct Verso to reimburse and "make whole" each plaintiff and class member, and the beneficiary or beneficiaries of each class member who died after the December 31, 2016 termination of retiree life insurance coverage, for life insurance coverage and death benefits and, in addition, all expenses, life insurance premiums, injury, loss, anxiety and distress, and other damages

15

and harm caused by termination of life insurance coverage and failure to timely pay death benefits;

F.      Direct Verso to pay interest on all "make whole" damages;

G.      Direct Verso to pay all costs and expenses incurred by plaintiffs, the class, class members, and class counsel related to the prosecution of this action;

H.      Direct Verso to pay plaintiffs' and class counsel's attorney fees at market rates as measured by fees in ERISA and LMRA litigation;

I.      Direct Verso to pay such other compensatory, punitive, and exemplary damages as may be warranted; and

J.      Award such other relief as may be warranted by law and equity.

s/Stuart M. Israel
_____

Stuart M. Israel (MI P15359)
John G. Adam (MI P37205)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com
jga@legghioisrael.com

David M. Cook (OH 0023469)
Cook & Logothetis, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
(513) 287-6980
dcook@econjustice.com

Attorneys for Plaintiffs Bailey,
Spencer, and USW

Maneesh Sharma (MI P71492)
Assistant General Counsel
United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy, Allied
Industrial and Service Workers
International Union, AFL-CIO-CLC
60 Boulevard of the Allies, Suite 807
Pittsburgh, PA 15222
(412) 562-2531
msharma@usw.org

Attorney for Plaintiff USW

September 26, 2017

## JURY DEMAND

Plaintiffs request a jury trial on all issues triable by a jury.


s/Stuart M. Israel
Stuart M. Israel (MI P15359)
John G. Adam (MI P37205)
Legghio & Israel, P.C.
306 South Washington, Suite 600
Royal Oak, MI 48067
(248) 398-5900
israel@legghioisrael.com
jga@legghioisrael.com

David M. Cook (OH 0023469)
Cook & Logothetis, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
(513) 287-6980
dcook@econjustice.com


Attorneys for Plaintiffs Bailey,
Spencer, and USW

Maneesh Sharma (MI P71492)
Assistant General Counsel
United Steel, Paper and Forestry,
Rubber, Manufacturing, Energy,
Allied Industrial and Service Workers
International Union, AFL-CIO-CLC
60 Boulevard of the Allies, Suite 807
Pittsburgh, PA 15222
(412) 562-2531
msharma@usw.org

Attorney for Plaintiff USW


September 26, 2017