UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CLIFFORD BAILEY, *et al.*,

    Plaintiffs,

vs.

VERSO CORPORATION,

    Defendant.

Case No. 3:17-cv-332

Magistrate Judge Michael J. Newman
(Consent Case)

___

**ORDER AND ENTRY DENYING DEFENDANT'S MOTION
FOR JUDGMENT ON THE PLEADINGS (DOC. 19)**
___

This civil case, for which the parties have consented to entry of final judgment by a United States Magistrate Judge, is before the Court on Defendant Verso Corporation's motion for judgment on the pleadings. Doc. 19. Plaintiffs filed a memorandum in opposition (doc. 39) and, thereafter, Defendant filed a reply (doc. 44). The Court heard oral argument on Defendant's motion on September 5, 2018. The Court has carefully considered all of the foregoing, including the extensive oral argument presented by counsel, and Defendant's motion is ripe for decision.

**I.**

Plaintiffs in this case are Clifford Bailey, James Spencer, and an industrial labor union named the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers' International Union ("USW"). Doc. 1 at PageID 1. Plaintiffs filed this action, on behalf of themselves and as representatives of a proposed class, asking the Court to enforce allegedly collectively-bargained promises of life insurance coverage and death benefits for retirees from Verso's now-closed Wickliffe, Kentucky paper mill (the "Wickliffe mill"). *Id*.

Verso is a producer of printing papers, specialty papers, and pulp and maintains its principal place of business and headquarters in Miamisburg, Ohio. *Id*. at PageID 4. Verso acquired NewPage Corporation (including Wickliffe Paper Company LLC) and the Wickliffe mill in 2015. *Id*. NewPage is a wholly-owned subsidiary of Verso. *Id*. NewPage acquired the Wickliffe mill from MeadWestvaco Corporation in 2005. *Id*. Before that time, the Wickliffe mill was owned and operated by Westvaco Corporation. *Id*. Westvaco merged with the Mead Corporation in 2002 and became MeadWestvaco Corporation. *Id*. Hereinafter, the undersigned refers to Verso and its predecessors collectively as "Verso."

For a period of years, through 2016, USW represented the unit of production and maintenance employees at the Wickliffe mill and was party to a series of collective bargaining agreements (hereinafter referred collectively as "CBA") with Verso and its predecessors that governed the Wickliffe mill. *Id*. at PageID 4. These CBAs include the 2010, 2002, 1996, 1992 and earlier CBAs. *Id*. Plaintiffs allege that, under the terms of these CBAs, USW-represented Wickliffe mill employees who retire under the collectively-bargained pension plan, beginning at retirement, are to receive company-paid life insurance coverage for "their lifetime." *Id*. at PageID 5. Specifically, the 2010 CBA provides the following:

**<u>Retiree Life Insurance</u>**

(a) After age 65 coverage for active employees for Basic Life Insurance and AD&D [accidental death and dismemberment] continues. However, the level of coverage at age 65 will be reduced by 8 percent per year thereafter until actual retirement but not below $4,000. At actual retirement or after age 65, coverage will be reduced to the $4,000 Life Insurance/Medical Insurance coverage presently provided for retired employees [hereinafter referred to as "Section (a)"].

(b) Employees hired after March 31, 1993 who retire between ages 55 and 65 with at least 5 years of service will have $4,000 Group Life coverage for the remainder of their lifetime. If they have less than 5 years of service, they will lose coverage [hereinafter referred to as "Section (b)"].

(c) Per the Master Agreement retiree life insurance death benefits will be terminated for active employees at the expiration of this agreement [hereinafter referred to as "Section (c)"].

Doc. 19-2 at PageID 313-14. The CBA in effect from June 2002 through June 30, 2010 states the same as Sections (a) and (b) above but does not contain a Section (c). Doc. 19-1 at PageID 241.

Plaintiffs and class representatives Clifford Bailey and James Spencer -- both Kentucky residents -- began working at the Wickliffe mill in the early 1970s. *Id*. at PageID 2-3. Bailey and Spencer were in the USW-represented collective bargaining unit and covered by the governing CBAs. *Id*. Bailey retired after 35 years of service in 2007 and Spencer retired after 41 years of service in June 2012. *Id*. Following their retirements, Verso closed the Wickliffe mill in June 2016 and terminated the CBA. Doc. 1 at PageID 9-10.

Following closure of the Wickliffe mill, Verso sent Plaintiffs notice that their life insurance coverage under the CBA would terminate effective December 31, 2017. *Id*. at PageID 10. Plaintiffs, who allege that they are entitled to life insurance coverage under the CBA for the reminder of their lifetimes, now bring this action asserting claims on behalf of themselves and a purported class of approximately 70 other retired employees. *Id*. at PageID 11-12. Plaintiffs allege that Verso: (1) breached the CBA by terminating their life insurance coverage; and (2) breached the welfare benefit plan in violation of the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3). Federal jurisdiction is proper under 28 U.S.C. § 1331 and venue is appropriate in this Court under 28 U.S.C. § 1391(b).

**II.**

The standard for reviewing a Rule 12(c) motion for judgment on the pleadings is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A motion to dismiss filed pursuant to Fed. R.

Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."

To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer

4

possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

### III.

Verso argues that judgment on the pleadings is proper in this case because, under the plain terms of the applicable CBAs, its obligation to provide life insurance to Plaintiffs ended upon termination of the CBA. *See* doc. 19 at PageID 190-95. In other words, Verso argues that the plain terms of the CBAs do not provide Plaintiffs with a vested right to life insurance coverage for the remainder of their individual lifetimes. *Id*. Plaintiffs, on the other hand, argue that the CBA is ambiguous -- at least latently ambiguous -- and, therefore, the CBA can plausibly be read to provide Plaintiffs with life insurance coverage for their lifetime. *See* doc. 39.

"[F]ederal law is the exclusive law used to interpret the duties and obligations contained within collective bargaining agreements[.]" *Nw. Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.*, 270 F.3d 1018, 1030 (6th Cir. 2001). Under federal law, collective bargaining agreements must be interpreted "according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, --- U.S. ---, 135 S. Ct. 926, 933 (2015) (citing *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 456-57 (1957)). In doing so, the parties' intentions are to control and, thus, "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Id*. (citing 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) (Williston)).

5

Ambiguity exists where, "after applying established rules of interpretation, [a collective bargaining agreement] remains reasonably susceptible to at least two reasonable but conflicting meanings." *CNH Indus. N.V. v. Reese*, --- U.S. ---, 138 S. Ct. 761, 765 (2018). "Ambiguities may be patent or latent." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). A patent ambiguity is one "that clearly appears on the face of a document, arising from the language itself." *Vitakraft Sun Seed Co., Inc. v. UFCW Local 75*, No. 14 CV 1741, 2016 WL 726902, at *3 (N.D. Ohio Feb. 24, 2016). A latent ambiguity is one "that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Id*. "The determination as to whether or not a contract is ambiguous is a decision for the court to make." *Marentette v. Local 174, United Auto Aerospace & Agric. Workers of Am.*, 907 F.2d 603, 612 (6th Cir. 1990).

The Court here finds, contrary to the arguments advanced by Verso, that the collective bargaining agreement, on its face, can be reasonably and plausibly construed as vesting life insurance coverage to retirees for each retiree's individual lifetime. In so concluding, the undersigned recognizes that the collective bargaining agreements at issue contain general durational clauses stating that the CBAs "shall continue in effect" until a date specific "and for yearly periods thereafter unless terminated as provided" in the agreements. *See* doc. 19-1 at PageID 249-50; doc. 19-2 at PageID 2. Without dispute, the collective bargaining relationship between the parties terminated in June 2016. *See* doc. 1 at PageID 9.

Pursuant to the Supreme Court precedent, absent a provision regarding the duration of particular welfare benefits -- such as life insurance coverage -- the durational clause would apply and life insurance coverage for retirees would end as of the termination of the CBA. *Reese*, 138 S. Ct. at 766; *see also Gallo v. Moen, Inc.*, 813 F.3d 265, 272 (6th Cir. 2016) (stating that, [i]n the

absence of specific language in the [benefit] provisions [at issue], the general durational clause controls"). The question in this case, then, is whether the retiree life insurance provisions in the CBAs at issue specifically set forth any other time limit for which life insurance coverage was to be provided by Verso.

At least one life insurance provision of the CBA contains a different durational clause. Section (b) ensures that certain retired employees -- *i.e.*, those retiring early, between the ages of 55 and 65 with at least 5 years of service (hereinafter "early retirees") – shall receive "coverage for the remainder of their lifetime." *Id*. There can be no dispute then that at least some retired employees are entitled to life insurance coverage for the remainder of their lifetimes. *Id*. Section (a), on the other hand, provides that employees who retire at or after age 65 are entitled to "the $4,000 Life Insurance . . . coverage presently provided for retired employees." Doc. 19-2 at PageID 314. The terms of Section (a) do not specifically state that such coverage shall be for each retiree's lifetime.

Verso argues that, because the specific terms of Section (a) set forth no duration for which it is obligated to provide life insurance coverage, its obligation to provide such coverage to those who retired at or after age 65 is limited to the time period governed by the general durational clause, *i.e.*, upon expiration or termination of the CBA. *See* doc. 19 at PageID 193. In so arguing, however, Verso ignores the phrase stating that employees retiring on or after age 65 will receive the life insurance "coverage presently provided for retired employees." *See* doc. 19-2 at PageID 314. The question is, then, what life insurance coverage is "presently provided for retired employees" under the terms of the CBA?

Verso points to no provision of the CBA identifying what is "presently provided for retired employees" or attempt to ascribe meaning to that phrase. We do know, however, that during the

7

effective dates of the CBAs at issue, certain retired employees – namely, early retirees -- received life insurance "coverage for the remainder of their lifetime" under Section (b). *Id*. Section (a) simply uses the term "retired employees," a group in which early retirees would logically be included. Doc. 19-2 at PageID 314. Accordingly, one could reasonably conclude that the life insurance coverage provided to retired employees under Section (a), *i.e.*, retirees who are entitled to the "coverage presently provided for retired employees," includes the "Group Life coverage for the remainder of their lifetime" that is provided to retired employees who retired "between the ages of 55 and 65 with at least 5 years of service" under Section (b). *Id*.

## IV.

Based on the foregoing, the undersigned finds that the CBA is patently ambiguous, in that it can reasonably be read to provide Plaintiffs with life insurance coverage for the remainder of their lifetimes. As a result, Plaintiffs' complaint states plausible claims upon which relief can be granted and Verso's motion for judgment on the pleadings is **DENIED**. The Court declines to make a finding at this time as to whether the extrinsic evidence cited by Plaintiffs demonstrates the parties' intent to vest life insurance coverage to Plaintiffs for their lifetimes, and will defer such a decision for argument at summary judgment following discovery.

**IT IS SO ORDERED.**

Date:   December 17, 2018               s/ Michael J. Newman
                                                                 Michael J. Newman
                                                                 United States Magistrate Judge