UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CLIFFORD BAILEY, *et al.*,

    Plaintiffs,

vs.

VERSO CORPORATION,

    Defendant.

Case No. 3:17-cv-332

District Judge Michael J. Newman

___

**ORDER: (1) GRANTING THE PARTIES' RENEWED MOTION FOR CLASS CERTIFICATION (DOC. 68); (2) PRELIMINARILY APPROVING THE PARTIES' PROPOSED CLASS ACTION SETTLEMENT (DOC. 68-2); (3) APPROVING THE PARTIES' PROPOSED CLASS NOTICE (DOCS. 68-3, 69-1); (4) SETTING AN OBJECTION DEADLINE OF MAY 3, 2021 AND A FAIRNESS HEARING FOR JULY 7, 2021; (5) NAMING PLAINTIFFS CLIFFORD BAILEY AND JAMES SPENCER AS CLASS REPRESENTATIVES; AND (6) APPOINTING PLAINTIFFS' COUNSEL AS CLASS COUNSEL**

___

This civil case is before the Court pursuant to the parties' renewed motion for: (1) class certification; (2) preliminary settlement approval; (3) proposed class notice approval; and (4) to set an objection deadline and fairness hearing. Docs. 68, 69. The motion is fully briefed, and the deadline for a response has passed. For the reasons set forth herein, the Court **GRANTS** the parties' unopposed motion and (1) certifies the proposed class; (2) preliminarily approves the class settlement (doc. 68-2); (3) approves the proposed class notice (docs. 68-3, 69-1); (4) sets an objection deadline of May 3, 2021 and a fairness hearing for July 7, 2021 at 2:00 p.m.; (5) names Plaintiffs Clifford Bailey and James Spencer as class representatives; and (6) appoints Plaintiffs' counsel as class counsel.

## I. Background

### A. Plaintiffs Sue to Recover Vested Life Insurance Benefits

Plaintiffs in this case are Clifford Bailey, James Spencer, and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers' International Union, AFL-CIO-CIC ("USW"). Doc. 1 at PageID 1. Plaintiffs filed this action under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), (e), and (f), on behalf of themselves and as representatives of a proposed class, to recover collectively-bargained life insurance coverage and death benefits for retirees of Defendant Verso Corporation's ("Verso") now-closed Wickliffe, Kentucky paper mill (the "Wickliffe mill"). *Id.*

USW represented the Wickliffe mill unit of production and maintenance employees and negotiated a series of collective bargaining agreements ("CBA") with Verso and its predecessors. *Id.* at PageID 4. CBAs were finalized in 1992, 1996, 2002, and 2010. *Id.* Plaintiffs allege that employees who retired under these CBAs are entitled to receive life insurance coverage for "their lifetime." *Id.* at PageID5. The 2010 CBA provides:

> **Retiree Life Insurance**
>
> (a) After age 65 coverage for active employees for Basic Life Insurance and AD&D [accidental death and dismemberment] continues. However, the level of coverage at age 65 will be reduced by 8 percent per year thereafter until actual retirement but not below $4,000. At actual retirement or after age 65, coverage will be reduced to the $4,000 Life Insurance/Medical Insurance coverage presently provided for retired employees [hereinafter referred to as "Section (a)"].
>
> (b) Employees hired after March 31, 1993 who retire between ages 55 and 65 with at least 5 years of service will have $4,000 Group Life coverage for the remainder of their lifetime. If they have less than 5 years of service, they will lose coverage [hereinafter referred to as "Section (b)"].

> (c) Per the Master Agreement retiree life insurance death benefits will be terminated for active employees at the expiration of this agreement [hereinafter referred to as "Section (c)"].

Doc. 19-2 at PageID 313–14. The CBAs in effect from 1992 to 2010 contain Sections (a) and (b) but not Section (c). Doc. 1-3 at PageID 29; doc. 1-4 at Page 35; doc. 1-5 at PageID 40–41; doc. 19-1 at PageID 241.

Class representatives Bailey and Spencer began working in the Wickliffe mill in the early 1970s. Doc. 1 at PageID 2–3. Both were covered by CBAs in effect during their tenure. *Id.* Bailey retired in 2007 with 35 years of service, and Spencer retired after 41 years of service in 2012. *Id.* Verso closed the Wickliffe mill in June 2016 and canceled the CBA. *Id.* at PageID 9–10. Following the closure, Verso sent Plaintiffs notice that their life insurance coverage under the CBA would terminate effective December 31, 2016. *Id.* at PageID 10.

### B. The Court's December 17, 2018 Order

Verso moved to dismiss Plaintiffs' complaint on the grounds that the plain terms of the CBA did not obligate Verso to provide life insurance benefits beyond the CBA's termination date. *See* doc. 19 at PageID 190–95. Plaintiffs argued that the retiree life insurance provision was ambiguous and could be read as affording retirees with life insurance benefits for their life. *See* doc. 39 at PageID 1015. The Court agreed with Plaintiffs and found that the CBA could plausibly be read as vesting life insurance benefits to retirees for their lifetime. *See* doc. 46 at PageID 1517.

### C. Parties' First Motion for Class Certification and Settlement Approval

Following the Court's decision, the parties reached a settlement agreement (doc. 59), and Plaintiffs filed a motion to certify the class, approve the settlement, and distribute notice (doc. 60). Verso objected to the motion over Plaintiffs' late disclosure of sixty-five additional retirees who were not known to Verso on the date the settlement agreement was signed. *See* doc. 61 at PageID

1685–86. The Court granted Verso additional time to confirm the identity of retirees who are entitled to notice of the settlement and denied Plaintiffs' motion without prejudice. *See* doc. 63 at PageID 1700. The parties advised the Court at a status conference that they would re-file a motion for class certification and settlement approval as soon as they agreed on a final class member list. *See* doc. 65. Now before the Court is the parties' joint motion for class certification and settlement approval. Doc. 68.

### D. Settlement Terms

The parties' settlement seeks to cover all retirees whose life insurance or death benefits were affected by Verso's termination of the CBA. *See* doc. 68-2 at PageID 1734–35. Under the settlement, all living retirees covered under the now-terminated CBA are entitled to receive a life insurance death benefit of $2,750 for the rest of their lives. *Id.* at PageID 1736. Verso will also provide beneficiaries or next of kin of any deceased class member with a lump-sum payment of $3,000. *Id.* Six out of the 152 class members have died. *See* doc. 68 at PageID 1717–18. Named Plaintiffs, the USW, and class members must relinquish all future claims for life insurance benefits under the CBA. *See* doc. 68-2 at PageID 1737.

### II. Preliminary Settlement Approval

Class action suits filed in federal court may only be settled with the court's approval. *See* Fed. R. Civ. P. 23(e). Settlement approval consists of three steps: "(1) the court must preliminarily approve the proposed settlement, (2) members of the class must be given notice of the proposed settlement, and (3) after holding a hearing, the court must give its final approval of the settlement." *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001); *see also Williams v. Vokovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts review class settlements to protect the interests of absent parties by ensuring the agreement is not "the product of fraud or overreaching by, or collusion between, the negotiating parties and that the settlement, taken as a whole, is fair,

reasonable and adequate to all concerned." *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir. 1986) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

This case is at the preliminary approval stage. District courts in the Sixth Circuit balance the following factors to determine whether the proposed settlement is "fair, reasonable, and adequate":

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement.

*Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-cv-1147, 2020 WL 5366380, at *2 (S.D. Ohio Sept. 8, 2020) (quoting *Vigna v. Emery Fed. Credit Union*, No. 1:15-cv-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016)). The court need not make an affirmative determination of each factor but, rather, should grant preliminary approval if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." *Id.* (quoting *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d at 1015).

Counsel submit six reasons why preliminary approval in this case is warranted: (1) the settlement ends litigation that began in 2017; (2) an agreement provides class members with certainty; (3) all class members are treated similarly under the settlement; (4) the litigation was vigorously contested before settlement was struck; (5) the legal landscape for retirees has become

5

less favorable in recent years; and (6) class counsels' fee is reasonable. Doc. 68 at PageID 1722–24.[1] The Court agrees and finds the proposed settlement fair and reasonable.

Settlement of this matter is likely to save litigation costs and conserve judicial resources. *See, e.g.*, *In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002). The Court's order denying Defendant judgment as a matter of law, and finding the CBA to be ambiguous, meant that, if this case were to be resolved on the merits, pre-trial, the parties would have incurred the expense of briefing summary judgment. *See, e.g.*, *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 596 (E.D. Mich. 2006) (quoting *UAW v. Gen. Motors Corp.*, No. 05-cv-7399, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006)) ("The obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement"). This settlement is particularly beneficial for class members because it guarantees them a pay-out without the corresponding uncertainty of dispositive motion practice. *See, e.g.*, *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) ("What makes these settlements particularly sensible, moreover, is that, even if this merits question favored one party over the other, the retirees still would have had ample reason to control the resolution of this dispute through negotiation today rather than litigation tomorrow"). The Court is also satisfied that the settlement was negotiated free of "fraud or collusion" because counsel worked together to identify all members of the class. *See, e.g.*, *IUE-CWA*, 238 F.R.D. at 597; *see also* doc. 65.

ERISA affords courts discretion to approve reasonable attorney's fees and costs awards. 29 U.S.C. § 1132(g)(1). District courts in the Sixth Circuit evaluate fee awards in ERISA cases

---

[1] In *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 438 (2015), the Supreme Court held that the vesting of healthcare benefits under CBAs should be determined according to settled contract interpretation principles. The Court overruled the Sixth Circuit's decision in *UAW v. Yard-Man*, 716 F.2d 1476, 1479 (6th Cir. 1983), which instructed courts to presume benefits vested for a lifetime where the contract lacks a durational clause. The Court, in this instance, applied *Tackett* and its progeny in ruling on Defendant's motion for judgment on the pleadings. Doc. 46 at PageID 1514.

under the common fund doctrine. *See, e.g.*, *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 667613, at *1 (S.D. Ohio Dec. 12, 2012). One method for assessing the reasonableness of a class counsel fee award is the percentage of recovery approach that measures the fee as a proportion of the gross settlement. *See, e.g.*, *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008). Courts have found fee awards of ten-to-thirty percent of the common fund to be within "the range of reasonableness." *See, e.g.*, *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d at 1042 ("Generally, in common fund cases, the fee percentages range from 10 to 30 percent (10%–30%) of the common fund created"); *see also Clevenger v. Dillards, Inc.*, No. C-1-02-558, 2007 WL 764291, at *2–3 (S.D. Ohio Mar. 9, 2007) (approving an award that comprised twenty-nine percent of the common fund in an ERISA case).

Class counsel is set to receive $80,000 in fees and $2,874 in costs under the settlement agreement. *See* doc. 68-2 at PageID 1736. The value of the fund is approximately $419,500, comprised of 146 retirees who will receive a $2,750 life insurance benefit and six beneficiaries who will receive $3,000. *See* doc. 68 at PageID 1717–18. Class counsels' fees and costs constitute approximately twenty percent of the common fund, and the award is, thus, squarely within a reasonable range.

**III.     Class Certification and Notice Approval**

A class may only be certified, pursuant to Rule 23, if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

7

Fed. R. Civ. P. 23(a). "These four requirements -- numerosity, commonality, typicality, and adequate representation -- serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs because class representatives must share the same interests and injury as the class members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

The parties agree that a class action is the proper vehicle to resolve this case. *See* doc. 68 at PageID 1722. Plaintiffs advanced claims that could have been brought by any one of the retirees. *Id.* at PageID 1723. Their efforts secured a pro-rata recovery that no individual class member would have been incentivized to pursue on their own. *Id.* Additionally, the parties stipulate that named Plaintiffs and their counsel will adequately represent the class. *Id.* at PageID 1725–26. The Court agrees and, for the following reasons, certifies the class.

### A. Rule 23 Factors

#### 1. Numerosity

While there is no strict test to determine when the class is sufficiently numerous to be joined under Rule 23, a "substantial" number of class members satisfies the element. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). Courts routinely approve classes with forty or more members. *See, e.g.*, *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249, 255 (S.D. Ohio 2017). The 152 members of the proposed class in this case satisfies the numerosity requirement. *See* doc. 68-5 at PageID 1760–64.

#### 2. Commonality

Commonality asks whether the class members suffered the same injury. *See, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 852. Class claims must depend on a common contention "capable of class wide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

8

of the claims in one stroke." *Davis v. Cintas Corp.*, 717 F.3d 476, 487 (6th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Commonality is met here because the settlement resolves the singular question presented by the retirees; namely, whether their life insurance benefit vested for a lifetime. *See* doc. 68 at PageID 1716.

### 3. Typicality

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 852 (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc)). "This requirement [e]nsures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852–53. Typicality is satisfied here because the class claims could have been brought by any individual retiree and the class representatives' efforts led to a recovery equally distributed among the class. *See* doc. 68 at PageID 1716–17.

### 4. Adequacy of Representation

Finally, to satisfy the adequacy of representation element "(1) the representatives must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013)). "The court reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). Here, class counsel are experienced ERISA litigators and have administered the settlement of numerous retiree-benefit class actions. *See, e.g.*, *UAW v. Kelsey-Hayes Co.*, No. 2:11-cv-14434, 2015 WL

1906133, at *3 (E.D. Mich. Apr. 28, 2015) (citing cases where attorneys Stuart M. Israel and John G. Adam -- class counsel in this matter -- were found to be qualified class counsel). Therefore, the Court finds the adequacy of representation element met.

### 5. Rule 23(b)(2) Requirements

Plaintiffs' claims were brought and settled pursuant to Rule 23(b)(2). *See* doc. 68-2 at PageID 1735. Rule 23(b)(2) provides that a class is properly certified where the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Numerous courts have found certification under Rule 23(b)(2) to be proper in ERISA and LMRA cases where injunctive relief would prevent an employer from altering collectively-bargained-for benefits. *See, e.g.*, *UAW v. Kelsey-Hayes Co.*, 290 F.R.D. 77, 82 (E.D. Mich. 2013); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 665 (E.D. Mich. 1995).

Plaintiffs here allege Verso terminated the life insurance benefit in contravention of the CBA. Doc. 1 at PageID 4–11. Declaratory relief would prevent Verso from forever altering the benefits on a class-wide basis. *See* doc. 68-2 at PageID 1735. The Court therefore finds that Rule 23(b)(2) certification is appropriate.

### B. Rule 23(c)(2)(A) Notice

Before approving a settlement and certifying the class, the district court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(A) affords the Court with discretion to "direct appropriate notice to the class," as opposed to Rule 23(c)(2)(B)'s more stringent requirements. The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Gen. Motors Corp.*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court is satisfied that the proposed class notice will sufficiently inform class members on how to procure payment and object to the settlement if desired. *See* doc. 68-3 at PageID 1747–55.[2] The notice clearly explains the nature of the lawsuit, accurately summarizes the settlement agreement, and identifies how class members can receive payment. *Id.* Class members are notified of their right to object to the settlement, appear at the fairness hearing, and retain their own lawyer. *Id.* The claim form attached to the class notice also succinctly informs class members that participation in the settlement binds them to the terms of the settlement agreement. *Id.* at PageID at 1754.

## IV.     Conclusion

For the foregoing reasons, the Court **GRANTS** the parties' joint motion for preliminary settlement approval and certifies the following class:

> All living and deceased retirees from Verso Corporation's Wickliffe, Kentucky Papermill who were affected by Verso Corporation's December 31, 2016 termination of the death benefit provided under the Parties' collective-bargaining agreement.

The Court also adopts the following deadlines: (1) class members shall have until May 3, 2021 to file objections, (2) claims must be submitted by June 1, 2021, and (3) a fairness hearing will be held on July 7, 2021 at 2:00 p.m. in the courtroom of the undersigned. The Court will set the format of the fairness hearing by separate order.

Further, the Court **ORDERS** that Plaintiffs Clifford Bailey and James Spencer be named class representatives pursuant to Rule 23(a)(4) and that Plaintiffs' counsel John G. Adam, Bennett P. Allen, and Stuart M. Israel and their law firms be appointed Rule 23(g) class counsel.

---

[2] On February 3, 2021, counsel submitted a revised class notice. Doc. 69. The only material difference between the proposed notice attached to the parties' renewed motion for preliminary settlement approval and class certification (doc. 68-3) and the revised notice is the agreed-upon objection and claim deadlines and fairness hearing date. Doc. 69-1 at PageID 1776, 1779. The Court approves of the revised notice. *See supra.*

11

**IT IS SO ORDERED.**

Date:  February 22, 2021                         s/Michael J. Newman
                                                 Hon. Michael J. Newman
                                                 United States District Judge